Brown v: Potteck.

---

. No. 23,247.

RALPH P. BROWN, *Plaintiff*, v. CARL POTTECK, as City Clerk of the City of Coffeyville, *Defendant*.

#### SYLLABUS BY THE COURT.

CITY OF FIRST CLASS—*Under Commission Form of Government—No Statutory Provision for Withdrawal of Candidate Nominated for City Office at Primary Election.* The statute concerning the election of municipal officers in cities of the first class which have adopted the commission form of government makes no provision for the withdrawal of a candidate nominated at the primary, nor for the filling of a vacancy in the list of nominees occurring between the primary and the election.

Original proceeding in mandamus. Opinion filed November 6, 1920. Writ denied.

*A. R. Lamb,* and *Clement A. Reed,* both of Coffeyville, for the plaintiff.

*Dallas W. Knapp,* of Coffeyville, for the defendant.

The opinion of the court was delivered by

MASON, J.: Coffeyville is a city of the first class, having less than 18,000 population, which has adopted the commission form of government. At the primary election held August 3,

1920, for the nomination of city officers, George R. Snelling received the highest vote for mayor, and he and the person having the next highest vote became the nominees to be voted for at the election to be held November 2. On October 12, Snelling undertook to cause his name to be withdrawn by filing with the city clerk a request to that effect. Petitions were then presented to the clerk, one of them being signed by more than a third of the persons who had voted for Snelling at the primary, asking that the name of Ralph P. Brown be substituted for that of Snelling on the ballot about to be printed. The clerk, being unable to find any warrant in the statute for such action, declined to omit the name of Snelling or to insert that of Brown, and in order to determine the matter Brown brought this action against the clerk asking an order requiring it.

The primary election in cities having the commission form of government is conducted upon a different basis from any other. Party politics has no part in it. It is an elimination contest in which the two candidates having the highest vote for each office become the nominees between whom the voters make choice at the election. The provisions concerning such an election in cities of the first class are made in the act relating to commission form of government in such cities (Gen. Stat. 1915, § 1468) and contain no reference to the withdrawal of a candidate or the filling of a vacancy. The section just cited has a provision, however, that the general primary law (Gen. Stat. 1915, ch. 33, art. 4) shall govern the conduct of the city primary so far as applicable, and the general primary law refers to the statutes concerning elections, making them applicable to primaries where no inconsistency would result. (Gen. Stat. 1915, § 4183.)

The Australian ballot law provides for the withdrawal of a person who has been nominated for an office (Gen. Stat. 1915, § 4202) and for the filling of a vacancy caused in that or any other way "by the political party or the persons making the original nominations." (Gen. Stat. 1915, § 4203.) The provision regarding the political party obviously could not apply to an election conducted on a nonpartisan basis. That regarding the persons who made the original nomination plainly refers to the independent nominations made by certificates signed by a certain percentage of the electors. (Gen. Stat.

1915, § 4199.)   It would be manifestly impracticable to apply that provision in the case of a person nominated by votes cast at a secret ballot, owing to the impossibility of identifying the individuals who had voted for him, in the absence of some statutory method.   The recall amendment to the constitution (Gen. Stat. 1915, § 193) recognizes this difficulty and meets it by accepting the certificate of the signer of a petition for recall that he voted for the officer sought to be recalled as establishing that fact.   The primary-election law as originally adopted (Laws 1908, ch. 54), required a blank ticket (containing only the titles of the officers to be voted for) to be provided in addition to the tickets of the several political parties (§ 10), and directed the canvassing boards to "name the person receiving the highest number of votes cast upon the blank ticket for each office as the nonpartisan nominee for such office" (§ 13, subdiv. 6).   It may be doubted whether these provisions were ever of any practical effect, because the section first cited required the voter to call for and use a party ticket.   At all events they are no longer of any force, for all reference to the blank ballot was omitted in the revision of section 10 in 1915 (Gen. Stat. 1915, § 4183), and although section 13 has not been expressly amended (Gen. Stat. 1915, § 4186, subdiv. 6), the portion thereof referred to is necessarily inoperative because of that omission.   Whether or not under the original law a person named by a canvassing board as a nonpartisan nominee might have withdrawn, and if so whether his place could have been filled, need not be considered, as the question cannot arise under the statutes now existing.

We do not think that from the language used an intention can be attributed to the legislature to make the provisions of the Australian ballot law for withdrawal and for the filling of vacancies applicable to elections held in cities of the first class under the commission form of government act.   It will be noted that that act makes the general law applicable only with regard to "the conduct of said primary," there being no reference to steps subsequent thereto, and no such general adoption of the provisions of other statutes as is inserted in the primary law.   Nor does this act contain such a provision as is found in that relating to the commission form of government in cities of the second class, making the general election and primary laws

applicable to elections held thereunder. (Gen. Stat. 1915, § 1833.) It cannot be assumed that it was through oversight that no provision for the withdrawal of nominees or the filling of vacancies was made in the original legislation by which the nonpartisan form of election was adopted for cities of the first class operating under the commission form of government. That method of selecting officers for such cities was instituted in 1909 (Laws 1909, ch. 74, § 2, Gen. Stat. 1915, § 1468), and as the law stood from then until 1915 in all cases only eight days elapsed between the primary and the election (the elected officers assuming their duties practically at once) and it may well have been thought that that period was so short that withdrawals ought not to be allowed, because the plan of selection imposed by the statute would thereby be changed, and that deaths of candidates during the interval would be too infrequent to make legislation on the subject desirable. In 1915 municipal primaries and elections in cities of the first class having less than 18,000 inhabitants were required to be held on the days of the state primary and election, in August and November, the persons elected to take office in January. (Gen. Stat. 1915, § 1471.) This so greatly extended the time between the elimination contest and the final choice that the insertion in the new law of some provision regarding vacancies might have been regarded as desirable if attention had been directed to the subject, but the purpose of the change being doubtless merely to save the expense of a spring election it was not surprising that this phase of the matter should have been overlooked.

For these reasons the writ has been denied.